Appellant, you have to reserve some time for rebuttal. My name is Mike Goldberg, and I represent Dr. Kafin, whose medical license has been revoked as of July of 2011. He comes before you today asking that you reverse and remand this case and direct that he be given a hearing before the Medical Disciplinary Board. We're coming before you today in our appeal with three issues. One, that there was no board member present during his hearing and there should have been one present. The other is that an expert in the case that testified for the department offered an opinion that the statute had been violated, not as an MD that some standard of care in the medical field had been violated, but the actual statute had been violated, which we believe is a violation of the law. And lastly, that the punishment of a revocation is excessive in light of some of the cases that we cite where similar conduct or maybe more egregious conduct was given a six-month suspension. The first issue that we talk about is this issue of the board. And we're saying 225 ILCS 60-7 requires a board member to be present. The language says that the board shall be present, and it also says that they shall continue the case if they're not able to sit. What do you think would be the reason to require a board member to be present? Well, the process... To give a report to the others or why? Well, these are hearings involving medical issues. We know what they are. And the doctor is entitled to have another doctor sit there and assess credibility issues and look at facts. But there's a hearing officer for that purpose, too. There's a hearing officer who is a judge or a lawyer, a layperson to the medical field. Does the board members all medical doctors, is that what you're asserting? Two of them are laypeople. So are you saying that a medical doctor would have to be that one person that would have to be present? We're saying that a member of the disciplinary board... So it could be a layperson as the member of the board that could be present. Correct, but it would be a member of the medical disciplinary board. If you look at the Vagnoe case, V-A-U-G-N-I-A-U-X, it's a Supreme Court case, 2003. It's not on point for the board, but it talks about... There is no case on point. Right, and there's some misconception about what the law says, and I'll get to that in a second. But this case about the chiropractor where the chiropractor said, yeah, I should have a hearing, but that chiropractor on the board is biased against me. And the judge said, fine, we'll take that board member. That board member will not be part of this process, but we're going to appoint ourselves another chiropractor, which seems completely reasonable. But they don't have the authority to do so, to appoint somebody. We don't have that here. Well, I say that we do. We're arguing that they don't have the authority to decide that because there are two laypeople on the board, we can ignore what the legislature said. They can't decide around that. They have to have a board member present. The Abramson case says that... Abramson and Pondy and Bruns, all the cases that are being misconstrued, because there is language in there that says if one board member is there, they don't all have to be there. Because if you read 37, you could suggest that the whole board has to be there. It says the board. And the circuit court judge addressed that very argument and said that the language itself doesn't compel one member to be present. It simply says that with one member, it's enough. That's what Abramson says. Here we had no board member. I'm sorry, but is the Abramson fact specific? They did have one member present in that case. Right, so you can't rely on the language in Abramson, which is suggesting that it's okay for others to review the transcript, because Abramson is making that decision based on the fact that there was one board member present. As in Bruns, as in Pondy, these cases where there is language suggesting that others can read the transcript are all premised on factual situations where there is one board member present. And not to mention the fact that Abramson is a medical licensing board case. It's not even a disciplinary board case. So Abramson, I believe the trial court incorrectly said that Abramson somehow applies to these facts. It doesn't. There is a licensing board and a disciplinary board, and they're separate. So there are issues with the doctors continuing to prescribe. So there's treatment where the doctor is giving therapy, right? And then that starts in March of 2002 and ends in November, and the doctor says to the patient that he's got feelings for her and he's going to stop therapy. And then there are some prescriptions that are filled after November until probably March of 2003. There's no evidence that he actually sat there and wrote the prescriptions, but there's no doubt that they were filled under his name. So we don't know if they were refills or what. But there's no doubt that those prescriptions were being filled under his name while they were having a relationship. Now, a doctor or a member of the disciplinary board is going to be able to look at that and judge and assess whether that's really a patient-doctor relationship. There's issues of transference. But does that doctor have to be present at the hearing to do that? Can't that doctor do that by way of the transcript? The doctor, no. The doctor has to be there. The member of the disciplinary board has the responsibility, as per the legislature, to be present. They have to be there. The rules that have somehow trickled along, Abramson, Pundy, Bruns, which, in my opinion, have whittled down what actually happened. If you go to the licensing board, they're all there. That's part of it. The disciplinary board has been for many, many years. You're only going to get one. And now... Let me just stop you for a minute there. Isn't there evidence in this record that the doctor prescribed medication when he started this relationship? No, no. There's no doubt that he was prescribing from March of 2002, when they started with each other, through November of 2002. And there's no doubt that she filled prescriptions. Like, you could show... Well, did she testify that she received prescriptions? I don't believe that's what the record indicated. I believe that the record indicates that she was... And didn't the doctor testify that there may have been occasions in which he did prescribe medication? I think that there was occasions where he was giving her medicine directly. Okay, giving her medicine directly. So when he gives her medicine directly, you don't have to be a doctor to know that that is part of treatment. No, I would disagree, respectfully. You would disagree with that? I think a doctor... I think that... Obviously, if you look at the facts in this case... No, I mean the case law. There's case after case that holds that when you give medication to a patient, that that is part of medical treatment. Right, but the doctor is entitled to have a member of the medical disciplinary board present to evaluate the facts and the credibility, and to use that person's judgment. Even if they're a lay person. I mean, they're clearly... Can I just... I hate to interrupt you, but... I really do, but I'm just... I'm listening to what you're saying, and you're saying we've got to have the doctor there to assess credibility. But can't the doctor read a record and determine from the record, it's not a credibility assessment, whether or not you gave medication or you didn't give medication, and from their experience and knowledge, determine if that's a violation. Without hearing the person say, yes, I gave the medication after I had terminated the therapeutic relationship. In that one instance, possibly. But Justice Lankin, as a former trial court judge for many years... 20 years. Criminal court, I remember. I mean, the trier fact... Well, the hearing officer can act as a trier fact, but assessing credibility issues... But I'm saying, is that a credibility issue? I agree with that. I can't remember his exact testimony, but I thought the testimony was after I decided, you know, I professed my being enamored with her, that I stopped my professional relationship, that he continued to give her medication because it was harder for her to get another psychiatrist in that window. So he did give her more medication. If he said that, a doctor doesn't have to assess a credibility statement. If he admits doing it, then a doctor would say, is that a violation or not? Well, the doctor is entitled to have a member of the disciplinary board decide how egregious that is. Okay, now you're saying another issue. There's Pondy, where the patient, who was also an employee, attempted suicide, and there was no attempt to even transfer any of the care. Bad facts could make bad law. I mean, yes, there's testimony of him giving her controlled substance or medicine, probably not controlled substance, things you need a prescription for, yes. But what this panel or the court would be telling the department in cases where there's malpractice and serious medical issues that happen every day over there, you're saying you don't, even though the law, the legislature said that if the disciplinary board is not sitting at the time and place fixed in the notice or at the time and place to which the hearing has been continued, the department shall continue such hearing for a period not to exceed 30 days. It goes on to say in subpoenas, only the board can issue subpoenas. Only the disciplinary board can look at some confidential records. Other people can't. So what you'd be saying is that the doctors, the disciplinary board, has no responsibility to personally be present at any of those proceedings. And then we'd be stuck with a hearing officer who's a lawyer making all these assessments of experts where it's specifically, it's not supposed to be like it is at the Daly Center, where there's a jury and a judge, and yeah, there's a lot of medical issues, but we have experts and the jury models its way through it. But here, it's different. I'm not guessing. The legislature is saying it's different. The doctors, at least one has to be present to assess. What's the point? You're kind of inconsistent here because you say the doctor has to be present, but it's really a member of the board that has to be present. And the board member could be a layperson without any degree. That's true. Then he's just assessing just like the administrative law. But if that's just like the chiropractor case, just because it is possible, I'm not saying that they do have laypeople over there as the ones they designate, but just because that is possible doesn't mean that the department gets to ignore the legislature's law. They have to change it. Otherwise, they're a creature of legislation. They can't decide on their own not to have that happen. I would like to address the fact that the expert here testified that the statute was violated. And the judge, the ALJ, did suggest that he didn't rely on it in his decision, but he didn't strike that. But he said he wasn't considering it. Right. Isn't that the equivalent of striking it? And really, doesn't this issue really boil down to prejudice? And do you think anyone involved in this entire proceeding would be prejudiced by, would be swayed by those two questions and answers given by this individual? Certainly you're not suggesting that we would be swayed like that. Well, Justice Garcia, what I am suggesting is that it's further evidence or further facts for you to see how there does need to be a member of the disciplinary board present. That even if in this case it seems obvious that the law that we might be creating, if we say that it doesn't matter if a member of the disciplinary board is present, would be damaging to many cases and many doctors that go before the board and is not what is in the law. I do want to emphasize that the cases relied on by the state, Abramson, there was a board member present. In Bruns, there was a board member present. In Morgan, which is the U.S. Supreme Court case from 1936, the Supreme Court, the U.S. Supreme Court said, talking about the fact-gathering and the credibility, that duty cannot be performed by one who is not considered evidence or argument. It is not an impersonal obligation. It is a duty akin to that of a judge, the one who decides must hear. These are important principles that need to be guarded because, as I've said before, and I practice before the Department of Professional Regulation all the time, many, many clients, and to get to the point where you would have more than one member of the disciplinary board, and I don't know if it's for financial reasons or whatever, and get to the point where they won't even have a member of the disciplinary board present, flies in the face of the law and deprives a doctor of a fair hearing and a due process, which dovetails into the final argument that I want to make, which is that even there was a, the judge recommended a three-year indefinite suspension. The board agreed, and the director decided it should be reversed. So if you're the doctor, you would have appreciated that someone from the disciplinary board to even at least be there can't even really defend the position, and the director is allowed to just revoke without really giving, well, they could give reasons, but nothing that the board or the ALJ didn't know. So we're asking that the case be reversed and remanded so that it be directed that there be a hearing with a board member. The issue with the expert illustrates how that can be a problem. Just substitute it for a malpractice case, because gross negligence cases are the most prominent cases at the Department of Professional Regulation, and you're talking, you're giving an expert opinion. It's not about a relationship or things that we all can relate to, but it's about a procedure, a surgical procedure. We're talking about an administrative vacancy versus a jury. A jury can be swayed. A jury can be, or a plaintiff can be prejudiced by evidence that a jury has heard. That's not the situation we have here. You know, you're talking about the excessive nature. Well, what do you, what would you suggest that we do if we were going to deal with the punishment? Well, I would, he's been revoked since July. There's two other prominent cases that we have cited, both sides have cited, where there was a six-month suspension. I would recommend. Do you think that that's the right message that we should give to the community when a psychiatrist has sex with a patient or even a former patient where he gives her medication and other things, as the record shows, that there should be a six-month suspension? I mean, lawyers, when they have sex with clients in all the cases I've seen, they've lost their license. So, I mean, how can you tell us six months with a straight face? Yes, with a straight face, Justice. That should be the message that we should give out there, six months. There's a discipline out there already for six months. This doctor was 58 when this happened, had a career that was beyond reproach. Nobody suggested that. Balancing somebody who has whatever the issues that he had at that time, but to throw a doctor away who does a lot of good and helps people who really need it and say, you're done, that's it, I would balance the person's life against that. I obviously understand what you're saying and that we want to send a serious message and people need to be disciplined, but I don't think that his life should be thrown away and he shouldn't be able to practice anymore. That's why I asked you, what do you suggest that we do from a reasonable, you're a lawyer with a license, you're telling me six months or do you want to tell me what it really should be? No, I would tell you six months. If Pundy and these other cases said something different, have I seen cases where there have been drug or alcohol problems, sex addictions, sex with patients where people have been put on probation and had to go to Hattiesburg, Alabama for three or four months and get extensive therapy and be evaluated and monitored and they're never even suspended? I see that all the time. So, I mean, this is an extreme case and I think it's definitely much more than six months and I don't know if there's any way to discover that. There's no way for us to do anything with the punishment other than to reverse and remain for the court to determine what the appropriate sentence is. But, I mean, we are certainly constrained by the facts of this case. I know we're supposed to look at proportionate review with the other cases, but, I mean, the court made or the Finder fact here made a record of the egregious nature. The fact that there was really three times difference in the age. Actually a minor for purposes of alcohol. The judge made a credibility assessment, I keep saying the judge, but the fact finder made a credibility assessment as to who was telling the truth about the sex acts, the alcohol, the drugs, the fake IDs, and I thought a really strong thing here for the fact finder was to say that your doctor didn't really appreciate the seriousness of what he did and therefore they were concerned about his treatment of other patients because he tried to make it the 19-year-old's fault as opposed to the 58-year-old person who had the obligation to protect his patient from himself. And I think he also admitted in the record that he had gone out, was it playing basketball or something, with another patient so he didn't accept responsibility. He tried to put it off on the complaining or then his civil complaint. And so there's a strong record to support differing treatments than the facts of the six-month suspensions. Additional factors that are in your client's case that were not in those two cases. I would say the main difference, and I'll leave you with this, which is why a medical disciplinary board member should be present, is if you continue treating and seeing in the office and have sex in that context, I think that's more egregious. It might seem strange to compare different types of egregious conduct, which we can all agree aren't great, but that's what we do as lawyers. And I think that in Pundy, where the person was getting treatment and there was a sexual relationship and there was six months... Did they get married or something? Yeah, there was a whole... So the revocation is, I feel, excessive. Thank you. Thank you. Your Honors... We believe that the Director's decision should be affirmed here and that there are no meritorious issues that would warrant a remand. The main issue that's put forward is the suggestion that at least one board member was required to personally hear the evidence at the administrative hearing, and just to be clear, there's almost a subtext that the board's somehow not involved here, which is absolutely not the case. Excuse me. The board is very much participating in the decision-making. The board is receiving the report from the administrative law judge. The board is then reviewing that entire record, reviewing the transcript. The board's considering all of that information and then making its findings, conclusions, and recommendations to the Director. So the board's very much involved. And the only question is, is there some type of requirement here that in addition to that, at least one board member personally attend the hearing? And that's a mistaken premise. There's no such requirement as a matter of due process, and there's no such requirement as a matter of statutory construction. Does that make sense? Do you have a case on that point? Hmm? Do you have a case in Cyclos that would say that? In terms of the due process argument, I think the case is... It's a case that says that the board member doesn't have to be there when the statute says that he does. I think that that is what follows from reading the Abramson case, the Bruns case, and the underlying due process cases that are cited in those cases. All right, but there's no court that actually came out with that as an opinion, have they? That at least one board member... At least you don't need a board member. Yes. There's no case that specifically addresses that and rejects that, but I think that is implicit in what the courts are looking at in those cases in terms of what due process requires. Abramson says... But it's not a due process argument. It's a statutory argument. That's the alternative argument. Even if it's not required by due process, what Abramson tells us is if there's an express statutory requirement, then you have to follow the express statutory requirement. And there is no express statutory requirement in the Medical Practice Act that at least one board member personally attend the hearing. Is there such a requirement in... Is there such language in any other comparable agency that you're aware of? Does the legislature ever say that? No, and actually that's why I think that highlights that the position that the outline is taking is rather unusual and would actually require a very express legislative statement because typically it is not the case that a reviewing board that participates in the decision-making would also be personally hearing the evidence presented. For example, the Pollution Control Board under the Environmental Protection Act renders a decision, but none of the Pollution Control Board members attend the hearing or conduct the hearing. That's done by a hearing officer. And it's a similar situation in Department of Employment Security cases where there's an ALJ that conducts a hearing and then there's a reviewing board. So that would be quite a departure. And there's no such express language. Express language is at least one board member must personally attend the hearing. And counsel cited to a particular provision of the Medical Practice Act, Section 37, and the language there is that the board shall proceed to hear the charges. And I think that ties into what does it mean that the board shall proceed to hear the charges? The board is hearing the charges. The board is hearing the charges because it's receiving the evidence through the ALJ and then it's reviewing and considering that evidence. That's a hearing. It doesn't require any type of personal attendance. And that statute doesn't address any type of personal attendance. There's another sentence about when the board is not sitting. I feel like the context of that sentence that has to do with if the hearing is interrupted, here's what's going to happen. You can't continue it for more than 30 days. So we don't believe that anything in that statute meets this express language requirement that comes from Abramson. There's nothing in the statute that requires one board member to personally attend. And then if you don't have the statutory requirement, you're back to, well, is there some type of due process requirement? And when you look at the cases of that. Due process would always be a higher requirement, wouldn't it? I mean, if due process requires something, the statute has to require it. And so there's no need to go back to due process if your argument is that the statute doesn't require it. I want to just cover both points. It's neither due process requirement nor statutory requirement. Even if the statute didn't require due process, we'd have to read it into the statute, right? So given these cases, given what the statute says, there is no requirement that at least one board member personally attend. The board did what it was supposed to do under the statute. The statute lays out what's the board supposed to do. The hearing officer conducts the hearing. The board receives the report, reviews the record, makes a recommendation. That's what the statute is directed toward, and that's what happened here. There's some idea floated that, well, the board members couldn't address credibility, and that's actually an argument that Abramson specifically rejects, because the argument was made there that, well, these absent board members, how are they going to assess credibility? And the court squarely rejected that. They can assess credibility in their review role. They assess credibility by observing, by looking at what the ALJ found, reviewing that, and reading the transcript. I mean, they can see when someone is answering evasively and inconsistently, those type of things. So credibility can be assessed. Apart from that, counsel touched on the suggestion that a remand would be in order here because of purportedly improper expert testimony. It really comes down to a matter of two questions. Was it purportedly, or was it conclusively improper? I would say those two questions were actually not improper, because when you look at what those two questions were specifically, the expert was asked about whether certain conduct would be immoral. Actually, it wasn't immoral that was involved. It was the other one. Immoral is a different violation. Unethical, dishonorable, unethical, or unprofessional. And there's no statutory sites or anything in this with this kind of conduct. And I think those terms have, they don't just have a legal meaning. They have a professional meaning. So it's another way of saying deviated from the standard of care, which is what he says is okay. That is a fairer reading that this is really going to, was this inappropriate for a doctor to do? But even if there was any confusion about that, the bulk of that testimony, those are two questions, and this is testimony that goes on for pages and pages. And the department's counsel rephrased the line of questioning to make it very clearly focused on, is this type of conduct a deviation from the standard of care? Is this type of conduct a breach of responsibilities to patients? Does this type of conduct violate ethical principles? So that was overall what came through. Let me ask you this. Do we need an expert witness to tell us that? To tell any finder of fact whether that's immoral and improper and inappropriate? Well, there are cases that make clear that as a matter of judicial review, there should often be, there should be a clear record. You might not have needed expert testimony in this case, frankly, but the goal is to allow it. Then you've answered my question. You don't need expert testimony in this case, do you? I think in this case you may well not have needed the expert testimony. However, the expert testimony is there to make sure that there are no problems with cases that provide that. Board members are not supposed to use any knowledge outside the record. There should be a clear, fully well-developed record so that judicial review can follow. And anything that might have to be later determined is clearly set forth and developed in that record. Here you have the doctor's own acknowledgments, actually, that he understood this to be, he knew he had engaged in a boundary violation. He acknowledges that his own conduct was inappropriate and unprofessional. So that might have been enough without any further expert testimony, but we did have the expert testimony in this case. So given that there was that expert testimony, given that there were the doctor's own acknowledgments, given that we're talking about two questions that the ALJ regarded, we don't believe that there can be any question here of some type of prejudice from these questions that arguably we believe are proper in the first place. That leaves the sanction. And whether... Here's my question. Oh. Are we constrained to either accept or reverse entirely? Couldn't we simply reinstate the three-year suspension? Or is there a case law that says that we cannot? If the court is inclined to find that this particular sanction was an abuse of discretion, I believe that the better course, and there are cases to this effect. I cite one in my brief called Obasi, that the appropriate course would be then for the court to remand the matter to the Department of Justice. Generally, that occurs when there's no divergence in terms of the sanction. If both the board and the director concluded the same sanction should be applied, and the court says, no, we think both of you got it wrong. But here we've got a board saying three-year suspension. We've got the director saying, no, he's going to up it. He's going to do a revocation. And so we have before us these two possible sanctions. And what constrained us from simply using the proper basis to say that the board got it right, as opposed to the director? I would still say there that, particularly because there is that divergence, and because the cases are focused on the idea that it's the administrative agency that should decide the appropriate sanction in the first place, that the better course is to remand to the agency and say, here's the concern about the divergence. You guys work it out. I mean, of course, the court will decide the case as it's going to decide the case. So with respect to that sanction, it's a very deferential standard of review. It would have to be arbitrary, unreasonable, not in furtherance of the public interest. And on this record, it would have to be an abuse of discretion. And on this record, that's not what we have here. There were a lot of aggravating factors, both within the relationship and also a lot of evidence, that the doctor here was unwilling to acknowledge the significance of his actions. He took the position that boundary issues was one of his strengths. He declined to take a boundary course. He acknowledged that even apart from what had happened with this patient, he was playing sports with another patient. And that suggests this minimization of responsibility that creates issues about potential harm to other patients. So the sanction can't be deemed an abuse of discretion here. It was reasonable under the evidence and in support of the public interest. There are two cases referred to in which six-month suspensions were the sanction that was applied there. Those cases, the fact that a lesser sanction was at issue in those cases, does not make the director's sanction unreasonable in this case. Those cases were different in some important respects. One is simply the procedural posture of those cases because those cases are now coming before the court on review. And so the court is looking at, well, is this sanction that's applied here, is that an abuse of discretion? Those aren't setting a ceiling for some type of disciplinary maximum, regardless of the evidence in a particular case. And also, the facts of those particular cases are significantly different. And I've outlined that more in the brief. I've talked about some of the differences here, the difference within the actual relationship, and the differences in candor, evasively answering, not taking responsibility for actions, ignoring the recommendations of the multidisciplinary committee, and so on, that we believe warrants the severity of the sanction that was applied in this case. If there are no additional questions, I'll conclude. Thank you. A short rebuttal. I would like to point out something about the expert testimony. In the Obasi case, I believe it is required. In Obasi, the court saw Farney v. Anderson, and it says, the court explained the need for expert testimony as follows, the underlying, perhaps unspoken, reason for requiring expert evidence by the department is the existence of judicial review of the decisions of the medical disciplinary board. While it may seem idle and foolish to a board composed of physicians to present elementary questions of medicine to them by way of testimony of one of their brethren, yet it is far from idle to a court, not trained in medicine, which is called upon to determine the manifest weight of the evidence. Expert testimony, whether coming down on the positive or negative side of Farney's treatment, is essential. And this Obasi case reversed in part because of the fact that there was no expert testimony. And as counsel points out, the Obasi case also, what they did was they referred it, they remanded it back to the department for further proceedings consistent with their ruling. They didn't actually give out the punishment. I want to leave the panel with one important point. Abramson reviewed a medical licensing board case, a doctor who lied on his application and was before the board and it wasn't the full board. And so the case law that developed from Abramson, which we're all talking about, has nothing to do with the disciplinary board. There's nothing in the licensing board part of the statute that says that the licensing board shall be present. There's none of that language. So it's perfectly acceptable, I suppose, for the Abramsons. You could argue that they should still be present, but Abramson can say, look, there's no legislation telling us that the board member has to be there. In the case before this panel, a disciplinary case, the law clearly says that they have to be present. They shall be present. Thank you. Thank you. I take this case under advisement. Court is adjourned.